## Appeal of HART COTTON MILLS.

Docket No. 834.   Submitted June 15, 1925.   Decided October 23, 1925.

Value of assets determined from the evidence.

*William M. Williams, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before GREEN, MORRIS, and TRUSSELL.

The taxpayer appeals from the determination of a deficiency in income and profits taxes for the year 1918 in the sum of $28,849.53. The taxpayer contends that the Commissioner has undervalued its assets in computing its invested capital and depreciation.

### FINDINGS OF FACT.

Prior to their acquisition by the taxpayer, the assets in question were owned by the Tarboro Cotton Mills, a corporation established prior to 1900. In 1914 the Tarboro Cotton Mills went into the hands of a receiver and its assets were sold at a receiver's sale for $29,000 in cash, with the agreement on the part of the purchaser to assume the outstanding mortgage bonds in the sum of $100,000. The purchaser acquired the property for speculative purposes and did not operate it. He defaulted in the payment of interest on the bonds; foreclosure proceedings were instituted, and on the 19th day of June, 1916, the property was sold to three individuals for a cash consideration of $90,000.

Immediately upon their acquisition of the property, the three individuals commenced the rehabilitation thereof. The machinery and equipment had lain idle for months; the buildings were in a more or less run-down condition, and it was necessary to expend substantial sums of money to place the plant and equipment in operating condition. The Commissioner conceded the expenditure by the individuals of the sum of $42,270.32. Approximately $11,000 of the amount expended was invested in cotton to be used in the filling mill. The plant was in condition and being operated on or before October 2, 1916.

On October 2, 1916, the three individuals, having theretofore organized the taxpayer corporation, conveyed the assets in question to the corporation in exchange for its capital stock of the par value of $150,000.

From the evidence adduced we find the value of the assets conveyed to the taxpayer corporation to be the sum of $200,000, of which the value of the land was $83,000.

DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

OPINION.

GREEN: The two questions in this case, namely, the taxpayer's invested capital and the value of the depreciable assets, depend entirely upon the value of the assets acquired by the taxpayer corporation from the three individuals.

The testimony of the various witnesses was far from harmonious. The president of the taxpayer corporation, a man familiar with the industry, testified that the assets conveyed to the corporation had at the date of acquisition a market value of from $200,000 to $300,000. Another witness familiar with the industry placed a valuation of $243,000 upon the buildings, machinery, and equipment. He refused, however, to say that this was the market value thereof. He did testify that the "whole business" should have brought between $275,000 and $300,000. The Commissioner concluded that the value was the consideration paid at the last cash sale—namely, $90,000, plus the amount of $43,270.82 expended in the rehabilitation thereof.

The taxpayer, when this case was before the Commissioner, produced an appraisal showing the sound market value to be $286,823.16.

The vice president and two employees of an appraisal company appeared as witness and an appraisal prepared by them was admitted in evidence. This appraisal fixed the value of the assets, other than land, at $269,161.82. This valuation was arrived at by computations of the appraisal company based upon a replacement cost agreed to by both parties. After hearing the testimony of the three witnesses in support of the appraisal, we conclude that it is of no value whatever, and have entirely disregarded it in arriving at our determination of value. We have heretofore indicated that in our judgment such appraisals are entitled to little weight. *Appeal of Rockford Malleable Iron Works*, 2 B. T. A. 817; *Appeal of Tibby-Brawner Glass Co.*, 2 B. T. A. 918. It is not necessary for us to state again our reasons for these conclusions.

The plant was situated upon a tract of land 166 acres in area, and the witnesses were all in accord in placing thereon a value of $500 per acre, making a total of $83,000 to be allocated to this asset.

The evidence was to the effect that during the early part of the year 1916 and for some time prior thereto all of the cotton mills and the entire industry were in poor condition financially, but that the industry as a whole improved rapidly during the summer and fall of 1916 and that the improvement continued for several years with

the consequent continual appreciation in the values of the cotton mills.

From all the evidence we conclude that the assets acquired by the taxpayer had a fair market value on October 2, 1916, of $200,000. This being true, the taxpayer is entitled to include such assets at such amount in computing its invested capital. In this amount is included the value of the lands. This, subtracted from the total value of the assets, gives the basis for the computation of depreciation.